**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 22 B 03672 |
| | ) | |
| GAMAL S. NAGUIB and | ) | Chapter 7 |
| ANALIDA NAGUIB, | ) | |
| | ) | |
| Debtors. | ) | Honorable Janet S. Baer |
| | ) | |
| _____ | ) | |
| | ) | |
| FRANK J. KOKOSZKA, not individually, | ) | Adversary No. 24 A 00229 |
| but solely in his capacity as chapter 7 | ) | |
| trustee for the bankruptcy estate of | ) | |
| Gamal S. Naguib and Analida Naguib, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEBORAH NAGUIB, SELECTIVE | ) | |
| LIQUORS LLC, DBA 302 TAP ROOM, | ) | |
| JAMES ANTHONY, ANTHONY | ) | |
| REALTY INCORPORATED, and | ) | |
| CANTORE CONSTRUCTION | ) | |
| COMPANY, ASSUMED NAME FOR | ) | |
| CANTORE BOX, CABINET, AND | ) | |
| MAINTENANCE INC., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION**

Frank J. Kokoszka (the "Trustee"), in his capacity as chapter 7 trustee for the bankruptcy estate of Gamal S. Naguib ("Gamal") and Analida Naguib ("Analida," and, together with Gamal, the "Debtors"), filed an eight-count adversary complaint against the Debtors' adult children and their businesses, as well as a company that constructed a retail space for one of those businesses

1

(together, the "Defendants").[1] In his complaint, the Trustee alleges that the Debtors diverted valuable assets from their creditors through fraudulent and/or preferential transfers made to the Defendants and seeks to avoid and recover those transfers for the benefit of the Debtors' estate. The case is now before the Court on two related motions—one brought by the Insider Defendants and the other by Cantore—to dismiss the adversary complaint under Federal Rule of Civil Procedure 12(b)(6) (made applicable to adversary proceedings by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure).[2] For the reasons set forth below, both motions will be denied.

## FACTUAL BACKGROUND

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences from the facts in favor of the nonmovant. *See Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007); *Hernandez v. City of Goshen*, 324 F.3d 535, 537 (7th Cir. 2003). In addition to considering these allegations, the Court may take judicial notice of the contents of the dockets in both the adversary

---

[1] The Debtors' children are Deborah Naguib ("Deborah") and James Anthony ("James"). (Adv. Dkt. 24 A 00229, Dkt. 1 ¶¶ 7, 13.) Deborah is the owner of Selective Liquors LLC ("Selective Liquors"), doing business as 302 Tap Room ("Tap Room"), and James owns Anthony Realty Incorporated ("Anthony Realty"). (*Id.* ¶¶ 9–12, 15.) In this Memorandum Opinion, the Court will refer to Deborah, James, Selective Liquors, and Anthony Realty, collectively, as the "Insider Defendants." The other defendant in this adversary proceeding is Cantore Construction Company, assumed name for Cantore Box, Cabinet, and Maintenance, Inc. ("Cantore"), a company that constructed a retail liquor store space for Selective Liquors. (*Id.* ¶¶ 16, 58–60.)

[2] Unless otherwise noted, all statutory and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532, and the Federal Rules of Bankruptcy Procedure, respectively.

proceeding and the Debtors' bankruptcy case.[3] *See In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011). The material facts in this matter are as follows.[4]

On March 30, 2022 (the "Petition Date"), the Debtors filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, and the Trustee was appointed shortly thereafter. (Compl. ¶ 5; Bankr. Dkt. 1.) One of the creditors listed in the Debtors' schedules is Manuel Cesar Iglesias ("Iglesias"), a retired doctor who is a plaintiff in a civil action captioned *Iglesias et al. v. Naguib et al.*, Case No. 2016 CH 10564, which was filed against the Debtors in 2016 in the Circuit Court of Cook County (the "state court case").[5] (Compl. ¶¶ 33; 52; Bankr. Dkt. 20, Ex. 1.) In the state court case, Iglesias alleges that, from May 2002 to March 2016, Gamal implemented a fraudulent scheme in which he was able to embezzle from Iglesias about $4.9 million in "investments," as well as "administrative fees" totaling more than $885,000. (Compl. ¶¶ 45–51.) The parties litigated continuously over the course of the state court case—from 2016 until the Debtors filed their chapter 7 petition on March 30, 2022. (*Id.* ¶ 54.)

Throughout the state court proceedings but before the Petition Date, the Debtors made various payments and transfers to benefit their children and their children's businesses. On October

---

[3] When ruling on a motion to dismiss under Rule 12(b)(6), a court ordinarily is limited to the allegations in the complaint. *Fin. Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 663 (7th Cir. 2022) (citing *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997)). However, as is relevant here, a court also can consider "information that is properly subject to judicial notice," *Williamson v. Curran,* 714 F.3d 432, 436 (7th Cir. 2013), as well as additional facts offered by a plaintiff in opposing a motion to dismiss "so long as those facts are consistent with the pleadings," *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotations omitted).

[4] All record citations to "Adv. Dkt." are to Adv. No. 24 A 00229. All citations to the facts in the Trustee's complaint in that adversary, filed on August 1, 2024 at Docket No. 1, are abbreviated herein as "Compl. ¶." All references to "Bankr. Dkt." are to the Debtors' chapter 7 case, Bankr. No. 22 B 03672.

[5] The other plaintiff in the state court case is Iglesias's medical practice and business, Manuel Cesar Iglesias, M.D.S.C. (Compl. ¶ 34; Bankr. Dkt. 20, Ex. 1.) Throughout this Memorandum Opinion, references to "Iglesias" are to both the individual and his medical practice, as applicable. The defendants in the suit are the Debtors, James, and Masterpiece Corporation, an Illinois business owned by Gamal. (Compl. ¶ 28; Bankr. Dkt. 20, Ex. 1.)

15, 2018, Gamal, through his limited liability company Mini Malls LLC ("Mini Malls"), executed a contract with Cantore to construct a retail liquor store space for Selective Liquors for $199,185.[6] (*Id.* ¶¶ 11, 12, 59.) Cantore performed the construction work pursuant to the contract and was paid $112,768.25. (*Id.* ¶ 60.) When Mini Malls failed to timely pay the balance due, Cantore filed both a mechanic's lien against the property and a lawsuit against Mini Malls to collect the amount owed. (*Id.* ¶ 61.) On March 9, 2021, the Debtors sold a parcel of undeveloped property in Oak Brook, Illinois for $300,000 and then transferred $90,000 of the sales proceeds to Mini Malls, which, in turn, paid Cantore for the balance due for the buildout project. (*Id.* ¶¶ 62, 63; Bankr. Dkt. 1 at 46.) On December 29, 2021, Mini Malls sold the property on which Tap Room operates to Journeyman Properties, LLC for $650,000. (Compl. ¶ 67.) In addition to these transactions, the Debtors made hundreds of pre-petition transfers to Deborah, Selective Liquors, James, and Anthony Realty, as well as to third parties for the benefit of Deborah and James and their businesses, totaling almost $475,000.[7] (*Id.* ¶¶ 71–76; Adv. Dkt. 1, Exs. A–F.)

On April 8, 2022, about a week after the Petition Date, Iglesias filed a motion in the Debtors' bankruptcy case, seeking relief from the automatic stay in order to proceed with the state court lawsuit. (Bankr. Dkt. 11.)  Both the Debtors and the Trustee filed notices of objection to the stay relief motion (Bankr. Dkts. 15, 16), and the parties subsequently briefed the relevant issues

---

[6] Mini Malls was wholly owned and operated by Gamal. (Compl. ¶ 18.) The company had formerly owned the Villa Park property where Tap Room is located. (*Id.* ¶¶ 12, 19.)

[7] The Debtors made pre-petition transfers of $97,136.20 to Deborah (from May 1, 2009 to December 29, 2021); $20,881.76 to Selective Liquors (from November 12, 2019 to December 7, 2020); $16,861.08 to third parties for the benefit of Deborah and Selective Liquors (from December 11, 2019 to April 24, 2020); $80,559.72 to James (from May 1, 2009 to November 2, 2020); $226,165.14 to Anthony Realty (from October 20, 2009 to March 3, 2020); and $30,000.00 to third parties for the benefit of James and Anthony Realty (on October 15, 2009 and December 9, 2009). (*Id.* ¶¶ 71–76; Adv. Dkt. 1, Exs. A–F.)

(Bankr. Dkts. 20, 29, 37, 49, 57, 68). The motion was ultimately denied by the Court on November 30, 2022.[8] (Bankr. Dkt. 71; *see also* Bankr. Dkt. 88.) On December 9, 2022, Iglesias appealed the order denying stay relief. (Bankr. Dkt. 72.) The District Court for the Northern District of Illinois (the "District Court") dismissed the appeal on October 27, 2023 for want of prosecution. (Bankr. Dkt. 116.)

On June 27, 2023, while the appeal was pending, Iglesias filed a motion to substitute William J. Factor and the Law Office of William J. Factor, Ltd. (together, "Factor") for his former counsel. (Bankr. Dkt. 96.) The motion was granted on July 14, 2023. (Bankr. Dkt. 99.)

Shortly thereafter, Factor filed two motions on behalf of Iglesias pursuant to Federal Rule of Bankruptcy Procedure 2004. In the first, filed on August 16, 2023, Factor sought to examine Gamal; his adult children Deborah and James; Masterpiece Corporation, a business owned and operated by Gamal ("Masterpiece"); and others. (Bankr. Dkt. 100.) In the second motion, filed on September 13, 2023, Factor requested authorization to examine numerous financial institutions where the Debtors and certain of the Insider Defendants were believed to have accounts. (Bankr.

---

[8] Iglesias's motion for relief from the automatic stay ultimately resulted in a morass of briefs and other filings. Although Matthew M. Saffar, Iglesias's bankruptcy attorney at the time, made various statements and advanced a variety of arguments typically not seen in garden variety stay relief motions, the proposed order filed with the motion made clear that Iglesias and his medical practice were seeking stay relief merely to allow them to pursue their state court action. (*See* Bankr. Dkt. 11.) On August 19, 2022, however, having failed to timely move for an extension of time to object to the Debtors' discharge or the dischargeability of debt, Saffar filed a "Motion for Leave to File Instanter Pursuant to Rule 15(a)(2)," arguing that the stay relief motion was simply "mistitled" and that the motion had been filed for the purpose of pursuing dischargeability. (Bankr. Dkt. 49.) According to Saffer, the motion for stay relief and the related reply, to which the fourth amended state court complaint was attached, gave the Debtors "sufficient notice" of Iglesias's "intent to seek [nondischargeability] and object" to their discharge. (*Id.* at 4.) As such, he urged the Court to consider the motion an adversary complaint or, in the alternative, to allow him leave to file an adversary complaint. (*Id.*) On November 30, 2022, after the parties had extensively briefed the issues, the Court concluded that "no extraordinary circumstances [had] existed that prevented [Saffer, on behalf of Iglesias,] from timely filing a motion to extend time to file a 523 or 727 complaint or the complaint itself." (Bankr. Dkt. 88, Tr. at 7:8–12.) The Court further found that neither the motion for stay relief, the reply, nor the state court complaint attached as an exhibit could "serve as a 523 or 727 complaint." (*Id.* at 7:13–8:8.) Accordingly, the Court denied both Iglesias's Motion for Leave to File Instanter and his motion for stay relief, noting that a discharge order had already been entered and that, thus, Iglesias's claim had been discharged. (*Id.* at 8:2–17.)

5

Dkt. 110.) According to both motions, Iglesias had obtained only limited discovery in the state court case in connection with Gamal's alleged embezzlement of Iglesias's investment contributions, and discovery was needed both to ascertain whether the funds in question could be recovered and to learn if the Debtors had any property or interests in property which they failed to disclose or which they transferred to hinder, delay, and defraud creditors. (Bankr. Dkts. 100 ¶¶ 6, 11; 110 ¶¶ 8, 15.) The Debtors objected to both of the 2004 motions (Bankr. Dkts. 101, 112), and the initial motion was fully briefed (*see* Bankr. Dkts. 108, 111). Both motions were subsequently granted. (Bankr. Dkts. 114, 115.) Thereafter, numerous subpoenas were issued and served on Gamal, certain of the Insider Defendants, various financial institutions, and others. (*See* Bankr. Dkt. 148 at ¶ 24.)

On November 23, 2023, Gamal, certain of the Insider Defendants, and Masterpiece filed a motion to quash the subpoenas issued by Factor on behalf of Iglesias. (Bankr. Dkt. 124.) The movants argued, in pertinent part, that the discovery sought in the subpoenas was unduly burdensome and unnecessarily invasive. (*Id.* ¶ 7.) Iglesias objected to the motion to quash and, pursuant to the Court's scheduling order, filed a response on December 15, 2023 in support of his position. (Bankr. Dkts. 125, 129.) At a hearing on the motion to quash on December 22, 2023, the Court scrutinized and reviewed the terms of the subpoenas with the parties. During a subsequent hearing, the parties advised the Court that they had reached an understanding as to the subpoenas, and an agreed order, consistent with the Court's suggestions and guidance, was entered on January 19, 2024, granting in part the motion to quash. (Bankr. Dkt. 134.) The order provided, among other things, that a response to the subpoena for documents was due on or before February 9, 2024 (twenty-one days after the entry of the order) and that Gamal's deposition would be conducted via Zoom. (*Id.* ¶¶ 2, 4.)

On March 1, 2024, the Trustee filed a motion to employ Factor as his special counsel to represent the Trustee with respect to estate claims, including avoidance actions. (Bankr. Dkt. 138.) That motion was granted over the Debtors' objection on March 8, 2024. (Bankr. Dkt. 140.)

Although the Debtor and certain of the Insider Defendants ultimately provided some documents on February 20, 2024 in response to the subpoenas, the production was "limited and disorganized." (Bankr. Dkt. 141 ¶ 13.) As for 2004 examinations, the Trustee was informed that Gamal would not be available to sit for a deposition—via Zoom or otherwise—due to various health issues. (*Id.* ¶ 14.) On March 25, 2024, Factor, on behalf of both Iglesias and the Trustee, took the deposition of the Debtors' son James. (Bankr. Dkt. 148 at 10.) On the same day, he began deposing the Debtors' daughter Deborah. (*Id.* at 10–12; Adv. Dkt. 41, Ex. 4.) The examination ended abruptly, however, when Deborah had a "breakdown" and refused to continue; the session was never concluded. (*Id.*)

On March 22, 2024, eight days before his deadline to file avoidance actions, the Trustee filed a motion seeking to toll the statute of limitations imposed by section 546(a) in order to allow him to both complete his Rule 2004 discovery and preserve claims for prosecution on behalf of the estate (the "Tolling Motion"). (Bankr. Dkt. 141.) The Tolling Motion was set for hearing on March 29, 2024, one day prior to the expiration of the two-year deadline. In the motion, the Trustee argued that he was entitled to "equitable tolling" of the section 546(a) statute of limitations because of the dilatory tactics of the Debtors and certain Insider Defendants in avoiding discovery. The Debtors objected to the motion. (Bankr. Dkt. 142.)

On March 29, 2024, the Court granted the Trustee's motion in part, tolling the statute of limitations imposed by section 546(a)(1)(A) and authorizing the trustee to commence any action or proceeding under section 544, 545, 547, 548, or 553 until May 29, 2024, without prejudice to

further tolling. (Bankr. Dkt. 144.) The Court also set a briefing schedule on the issue and continued the Tolling Motion to May 3, 2024 for ruling. (*Id.*) In the response subsequently filed by the Debtors and the reply filed thereafter by the Trustee, the parties focused their discussions about extension of the 546(a) limitation period under both Federal Rule of Bankruptcy Procedure 9006(b) and the doctrine of equitable tolling. (Bankr. Dkts. 145, 148.)

On May 3, 2024, the Court granted the Tolling Motion and extended the Trustee's deadline for filing avoidance actions to August 1, 2024. (*See* Adv. Dkt. 32, Ex. B.) The corresponding order was subsequently entered on May 20, 2024 ("the Tolling Order"). (Bankr. Dkt. 157.) The Tolling Order does not cite to either Rule 9006(b) or equitable tolling. However, at the hearing on May 3, 2024, the Court stated: "[T]he motion is appropriate to grant, and I believe I have the authority under 9006(b) to do so." (Adv. Dkt. 32, Ex. B at 2:22–24.)

On June 3, 2024, the Debtors sought leave to appeal the Tolling Order. (Bankr. Dkt. 159.) About three months later, on September 12, 2024, the District Court denied the motion for leave to appeal. (Bankr. Dkt. 191.) According to the court, the Tolling Order was not a final order, and the Debtors had failed to raise a unique or novel issue that would justify leave to appeal the interlocutory order. (*Id.*)

On August 1, 2024, the Trustee filed an eight-count complaint against the Defendants, seeking avoidance, recovery, and turnover of fraudulent and preferential transfers under sections 542(a), 544(b)(1), 547(b), 548(a)(1)(A) and (B), and 550(a) of the Bankruptcy Code, 11 U.S.C. §§ 542(a), 544(b)(1), 547(b), 548(a)(1)(A) & (B), 550(a), and sections 5(a), 6(a) and (b), and 8(a) of the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/5(a), 6(a) & (b), 8(a). (Adv. Dkt. 1.) In response, Cantore and the Insider Defendants filed motions to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) on October 4, 2024 and October 22, 2024, respectively.

Cantore seeks dismissal of Counts 3 and 4 of the complaint (Adv. Dkt. 27); the Insider Defendants ask the Court to dismiss Counts 1, 2, 5, 6, and 7 (Adv. Dkt. 32).[9] The primary basis for both motions is that the complaint is barred by the two-year statute of limitations imposed by section 546 of the Bankruptcy Code and that the deadline for filing the complaint cannot be extended.

The two motions to dismiss have been fully briefed. Having reviewed all of the relevant documents, the arguments of the parties, and the applicable case law, the Court is now ready to rule.

**STANDARD FOR MOTIONS TO DISMISS**

To survive the Defendants' 12(b)(6) motions to dismiss, the Trustee's complaint must clear "two easy-to-clear hurdles." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). First, the complaint must provide fair notice of the claims and the grounds upon which they rest so that the Defendants can prepare their defense. *See Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 598 (7th Cir. 2019). Second, the allegations must "plausibly suggest that the [Trustee] has a right to relief, raising that possibility above a 'speculative level.'" *See Concentra*, 496 F.3d at 776 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Killingsworth,* 507 F.3d at 618 (noting that the plaintiff must plead "'enough facts to state a claim to relief that is plausible on its face'"). Plausibility means that the allegations in the complaint must permit "the [C]ourt to draw the reasonable inference that the [Defendants are] liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[9] In their motion to dismiss, the Insider Defendants explain that defendants Deborah and Selective Liquors neither filed an answer to nor moved to dismiss Count 8 of the complaint because "Bankruptcy Rule 7012(a) tolls the time to file an answer even when a motion to dismiss does not seek dismissal of all counts." (Adv. Dkt. 32 at 1 n.1 (citing, *inter alia*, *Oil Express Nat'l, Inc. v. D'Alessandro*, 173 F.R.D. 219, 221 (N.D. Ill. 1997) (stating that "a partial motion to dismiss allows for altering the limits of Fed. R. Civ. P. 12(a) with respect to answering those claims not addressed in Defendants' motion").)

Untimeliness of a claim under a statute of limitations is an affirmative defense. Fed. R. Civ. P. 8(c)(1) (made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7008); *Ebner v. Kaiser (In re Kaiser)*, 525 B.R. 697, 707 (Bankr. N.D. Ill. 2014). Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need not anticipate or overcome affirmative defenses. *Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009) (explaining that, as a result, "[d]ismissing a complaint as untimely at the pleading stage is an unusual step"). Accordingly, "a federal complaint does not fail to state a claim simply because it omits facts that would defeat a statute of limitations defense." *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006); *see also Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (explaining that the statute of limitations may be raised in a motion to dismiss, if "allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense" (internal quotations omitted)). "Dismissal based on an affirmative defense is . . . appropriate [only] 'when the plaintiff effectively pleads [himself] out of court by alleging facts that are sufficient to establish the defense.'" *Riches v. Loyola Univ. Med. Ctr.*, No. 23-cv-16676, 2025 WL 2767042, at *2 (N.D. Ill. Sep. 27, 2025) (quoting *Hollander*).

## JURISDICTION

Before turning to the parties' substantive arguments in this matter, the Court addresses the Insider Defendants' assertion that the Court had no jurisdiction to rule on the Tolling Motion because, at the time it was filed, there was no case or controversy before the Court. (Adv. Dkt. 32 ¶¶ 36–38.) Without a "live dispute" between the parties, the Insider Defendants argue, the Court had no authority to assert its judicial power, much less grant the Trustee's request for equitable

tolling of section 546(a)'s limitation period.[10] According to the Insider Defendants, the proper procedure would have been for the Trustee to file an untimely lawsuit—thus creating a case or controversy—and then seek equitable tolling in response to an anticipated or asserted statute of limitations defense. The Insider Defendants' argument is without merit.

Article III of the United States Constitution limits the judicial power to the adjudication of "cases or controversies." U.S. Const. art. III, § 2, cl. 1. The "case or controversy" requirement aims to ensure that the plaintiff has "a personal stake in the outcome in order to assure th[e] concrete advers[ity] which sharpens the presentation of issues necessary for the proper resolution of constitutional questions." *Perry v. Sheahan*, 222 F.3d 309, 313 (7th Cir. 2000) (internal quotations omitted). The doctrine's limitations concern issues of "standing, mootness, ripeness, and the prohibitions on providing advisory opinions and answering political questions." *J Publ'n Co.*, 656 B.R. 221, 224 (Bankr. N.D. Ill. 2023). Article III's case-or-controversy restrictions "apply to proceedings in bankruptcy courts." *Id.* (internal quotation omitted); *see also in re Cahill*, 642 B.R. 813, 823 (Bankr. N.D. Ill. 2022).

A "controversy" for purposes of Article III is "one that is appropriate for judicial determination." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937). Thus, a "justiciable controversy" can be neither "hypothetical or abstract" nor "academic or moot." *Id.* Rather, "[t]he

---

[10] The Insider Defendants also contend that the Trustee's Tolling Motion and the subsequent order granting it were inappropriate because they failed to identify any specific defendants or causes of action. (Adv. Dkt. 32 ¶¶ 37, 38.) As sole support for their position, the Insider Defendants cite to dicta in *In re No. 1 Contracting Corp.*, No. 5-10-bk-01755-JJT, 2012 WL 4114818 (Bankr. M.D. Pa. Sep. 19, 2012), a concise decision from the Bankruptcy Court of the Middle District of Pennsylvania. In that case, the focus of the court's concern in deciding whether to toll the statute of limitations imposed by section 546(a) was the "case or controversy" issue—that there was "no [pending] action in any form" and that it was "unknown whether future defendants [would] even assert the statute of limitations defense." *Id.* at *1. For "this reason," the court denied the chapter 7 trustee's request to equitably toll section 546(a)'s statute of limitations. *Id.* In any event, the decision is not controlling precedent and need not be followed here.

controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests." *Id.* at 240–41.

In this matter, the Debtors' chapter 7 case, along with the discovery being sought and conducted by the Trustee and Iglesias in connection with the investigation of potential causes of action against certain recipients of transfers from the Debtors, constitutes a "case or controversy" for purposes of Article III. Indeed, the bankruptcy case itself was pending when the Tolling Motion was filed, heard, and decided, and, accordingly, the time limit in section 546(a) was applicable and in effect. *See In re Kwok*, Case No. 22-50073 (JAM), 2024 WL 666646, at *3 (Bankr. D. Conn. Feb. 15, 2024). In addition, various discovery matters that were pending at or around the time the Tolling Motion was filed and ultimately decided—including the 2004 exams of both Deborah and Gamal—involved "definite and concrete" disputes between and among the parties and affected their legal relations. *See Aetna Life*, 300 U.S. at 240–41; *see also Parker v. Banner*, 479 F. Supp. 2d 827, 834 (N.D. Ill. 2007) (explaining that the "mandate of 'case or controversy' . . . requires [only] that something concrete be at stake—a dollar will do"). As such, the bankruptcy case itself and the many matters therein satisfy the "case or controversy" requirement under Article III of the U.S. Constitution.

Moreover, the Court finds that it was appropriate for the Trustee to seek an extension of the limitation period prior to its expiration, thereby putting known parties on notice that the investigation was ongoing and an action might be brought, rather than to wait until the period passed, file an untimely complaint, and then seek permission to pursue his claims. *See, e.g., IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689, 696–97 (11th Cir. 2005) (describing a similar procedural approach that occurred in the bankruptcy case); *In re Fairfield Sentry Ltd.*, 452 B.R. 52, 62 (Bankr. S.D.N.Y. 2011) (explaining, in the context of section 108 of

the Bankruptcy Code, that "waiting for an adversary proceeding to be [filed] and a statute of limitations defense to be raised and defended against . . . defies logic"). For all of these reasons, the Insider Defendants' request to dismiss the Trustee's complaint for lack of jurisdiction under the "case or controversy" doctrine is denied.

The Court had authority to rule on the Tolling Motion and also has jurisdiction to decide the parties' present dispute. That jurisdiction is conferred by 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. The motions to dismiss are core proceedings under 28 U.S.C. § 157(b)(2)(H).

## DISCUSSION

At the outset, the Court addresses the Trustee's threshold assertion that the law of the case requires the Court to adhere to its prior ruling which tolled the statute of limitations. (Adv. Dkt. 41 at 4–5.) According to the Trustee, the Defendants devote most of their motions to dismiss to "improperly relitigating" the Tolling Motion and the Court's related Tolling Order entered on May 20, 2024, which extended the statute of limitations imposed by section 546(a) to and including August 1, 2024. (*Id.* at 2.) Because his complaint was filed on August 1, 2024, the Trustee says, it was timely, and the Defendants should not be allowed to revisit the issue.

The doctrine of the law of the case is a rule of practice embodying the idea that "when an issue is once litigated and decided, that should be the end of the matter." *Analytical Eng'g, Inc. v. Baldwin Filters, Inc.*, 425 F.3d 443, 454 (7th Cir. 2005). "The rule provides consistency and protects parties from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action." *Id.* In order for the law of the case to apply, the relevant issue must have been determined either explicitly or by necessary implication in the previous disposition. *Flynn v. FCA US LLC*, 39 F.4th 946, 953–54 (7th Cir. 2022); *Naviscent, LLC*

13

*v. Otte (In re Martinez)*, 610 B.R. 290, 296 (Bankr. N.D. Cal. 2019); *aff'd in part and rev'd in part on other grounds*, 624 B.R 883 (N.D. Cal. 2021). In the context of bankruptcy, "case" refers to the matter initiated by the filing of a petition, as well as all adversary proceedings that arise within it. *Cohen v. Bucci*, 905 F.2d 1111, 1112 (7th Cir. 1990). Thus, the law of the case doctrine "applies in adversary proceedings in a bankruptcy case, and even between separate adversary proceedings in the same bankruptcy case." *In re Pilgrim's Pride Corp.*, 442 B.R. 522, 530 (Bankr. N.D. Tex. 2010).

Despite the rationale and sound objectives of the law of the case, the doctrine is discretionary and "not a rigid bar." *Flynn*, 39 F.4th at 953; *see Paloian v. Byline Bank (In re Kowalski)*, 633 B.R. 822, 826 (Bankr. N.D. Ill. 2021). Accordingly, the law of the case "does not put a limit on [a] court's power to reopen what has already been decided." *Analytical Eng'g*, 425 F.3d at 454; *see also United States v. Mazak*, 789 F.2d 580, 581 (7th Cir. 1986) (explaining that the doctrine "is flexible . . . [and] will not be enforced where doing so would produce an injustice"); *Champaign-Urbana News Agency, Inc. v. J. L. Cummins News Co.*, 632 F.2d 680, 683 (7th Cir. 1980) (finding that "[t]here is no need for rigid adherence to the earlier law of the case"); *Duffy v. United States*, 835 F. Supp. 1087, 1089–90 (N.D. Il. 1993) (explaining that the "law of the case is a discretionary prudential doctrine . . . , not a limitation on judicial power").

Given the circumstances in this matter, the Court finds that it is not bound by the law of the case doctrine and will therefore readdress the issues raised in the motions to dismiss. Specifically, the Tolling Motion was heard for the first time on March 29, 2024, just one day prior to the expiration of the Trustee's deadline to file an avoidance action. Although the Court initially extended that deadline for two months, not only to preserve the Trustee's claims for prosecution but also to set a briefing schedule on the issue, only the Debtors subsequently filed a response to

14

the Tolling Motion. As discussed *infra*, the Defendants claim—and the record confirms—that not all of the defendants named in the adversary proceeding were provided with notice of the Tolling Motion. (*See* Bankr. Dkt. 141.) As such, and because the Tolling Motion was ultimately ruled on with little explanation or elaboration, the Court will not rely on the law of the case doctrine to deny the Defendants' motions to dismiss.

### 1. The Extension or Tolling of the Statute of Limitations Under Section 546(a)

In their motions, the Insider Defendants and Cantore contend that the Trustee's complaint should be dismissed for failure to state a claim upon which relief can be granted because it was not filed within the limitation period established by section 546(a) of the Bankruptcy Code and is, thus, time barred. They also argue that the Tolling Order was legally impermissible and, therefore, of no effect. As to the latter, the Defendants assert both that the Court lacked authority to extend the limitation deadline pursuant to Rule 9006(b) and that the doctrine of equitable tolling cannot be properly applied here.[11]

Before addressing each of these claims in turn, the Court first turns to section 546(a) of the Bankruptcy Code, which provides as follows:

> (a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
>
> (1) the later of—
>
> (A) 2 years after the entry of the order for relief; or
>
> (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of

---

[11] In their motion to dismiss the Trustee's complaint, the Insider Defendants argue that the limitation deadline imposed by section 546(a) could not be either extended under Rule 9006(b) or suspended or otherwise paused by the doctrine of equitable tolling. (Adv. Dkt. 32; *see also* Adv. Dkt. 42.) In contrast, Cantore's motion to dismiss the complaint as untimely is based solely on the equitable tolling doctrine and makes no mention of extension of the limitation deadline pursuant to Rule 9006(b). (Adv. Dkt. 27; *see also* Adv. Dkt. 43.)

15

> this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
>
> (2) the time the case is closed or dismissed.

11 U.S.C. § 546(a). Pursuant to section 546(a)(1)(A), the Trustee had to file his complaint seeking avoidance and recovery of certain transfers from the Insider Defendants and Cantore under sections 544, 547, and 548 of the Bankruptcy Code by March 30, 2024.

On March 29, 2024, one day before the deadline, the Court conducted a hearing on the Trustee's Tolling Motion, in which he sought "an order tolling the two-year statute of limitations imposed by section 546(a)(1)(A)." (Adv. Dkt. 141 ¶ 18.) Although the Tolling Motion made no reference to extension of the limitation period pursuant to Rule 9006(b), the Court stated in its ruling on May 3, 2024 that it had the authority to grant the motion under that Rule.

### A. Federal Rule of Bankruptcy Procedure 9006(b)

Bankruptcy Rule 9006 governs how time periods are computed, extended, or shortened in the context of bankruptcy cases and proceedings. Subsection (b) of the Rule provides, in pertinent part, as follows:

> (b) **Extending Time.**
>
> (1) ***In General.*** This paragraph (1) applies when these rules, a notice given under these rules, or a court order requires or allows an act to be performed at or within a specific period. Except as provided in (2) and (3), the court may–at any time and for cause–extend the time to act if:
>
> (A) with or without a motion or notice, a request to extend is made before the period (or a previously extended period) expires; or

(B) on motion made after the specified period expires, the failure to act within that period resulted from excusable neglect.

(2) **Exceptions.** The court must not extend the time to act under Rules 1007(d), 2003(a) and (d), 7052, 9023, and 9024.[12]

Fed. R. Bankr. P. 9006(b).[13]

Whether a statute of limitations like the one in section 546(a) can be extended under Rule 9006(b) is a matter of first impression in the Seventh Circuit. In support of his argument that the Rule provides a mechanism for such an extension, the Trustee largely relies on *IBT International, Inc. v. Northern (In re International Administrative Services, Inc.)*, 408 F.3d 689 (11th Cir. 2005) ("*IAS*"), the only circuit level opinion on the issue.

In *IAS*, a case procedurally on point with the one here, the Eleventh Circuit affirmed a Florida bankruptcy court's extension of time for a trustee or other estate representative to

---

[12] Subsection (b)(3) of Rule 9006 addresses extensions governed by other rules, none of which are applicable in this matter.

[13] Rule 9006 was revised on April 2, 2024, effective December 1, 2024, as part of a broad effort to make the Bankruptcy Rules more readable and stylistically consistent. Prior to the revision, subsection (b) of the Rule read, in relevant part, as follows:

(b) **Enlargement.**

(1) **In General.** Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

(2) **Enlargement Not Permitted.** The court may not enlarge the time for taking action under Rules 1007(d), 2003(a) and (d), 7052, 9023, and 9024.

There were no substantive changes made to subsection (b)(1) or (2) of the Rule.

commence avoidance actions. *Id.* at 694–95. Finding that the debtor's founder and sole shareholder, as well as his associates, obstructed discovery, thereby hampering the U.S. Trustee's ability to investigate numerous suspect transfers, the bankruptcy court entered an order three days prior to the expiration of the statute of limitations imposed by section 546(a), extending the limitation period thereunder. *Id.* at 695–99. On appeal, the defendants argued, among other things, that section 546(a) was a jurisdictional bar that could not be extended by the bankruptcy court. *Id.* at 699. The Eleventh Circuit rejected that argument, holding that section 546 is not jurisdictional but rather a statute of limitations, "subject to waiver, equitable tolling, and equitable estoppel." *Id.* The court also held that Rule 9006(b) provided sufficient authority for the bankruptcy court to extend the section 546(a) deadline. *Id.*

The Insider Defendants disagree with the Eleventh Circuit's conclusions. They contend that the Trustee's complaint was filed after expiration of the section 546(a) limitation period and that the Court lacked the authority to extend the deadline pursuant to Rule 9006(b). Thus, they argue, the Tolling Order, which was premised on that Rule, was erroneous and consequently void. In support of their position, the Insider Defendants largely rely on *In re Walnut Hill, Inc.*, No. 16-20960 (JJT), 2018 WL 2672242 (Bankr. D. Conn. June 1, 2018), a case which summarily "reject[ed]" the Eleventh Circuit's decision in *IAS*, with essentially no explanation or analysis. *Id.* at *2. In *Walnut Hill*, as in the matter at bar, the chapter 7 trustee requested an extension of the deadline imposed by section 546(a), prior to the expiration of the limitation period thereunder, to file an avoidance action. *Id.* After conducting its analysis, the court found that Rule 9006(b) does not apply to section 546(a) and thus held that it was unnecessary to determine whether cause was shown for an extension of the deadline established by the statutory provision. *Id.*

18

The *Walnut Hill* court rested its conclusion on a plain-language analysis of Rule 9006(b). On its face, the court explained, Rule 9006(b) permits extensions of only those deadlines found in the Bankruptcy Rules, notices given thereunder, and court orders. *Id.* at \*1 (quoting the language from the Rule prior to its revision in 2024). Unlike subsection (a) of the Rule—which expressly "provides that it applies to '*any statute* that does not specify a method of computing time'"—the court said, subsection (b) "is noticeably missing the same, or similar, language involving its application to a statute." *Id.* Accordingly, the court found that Rule 9006(b) cannot be applied to section 546(a) "without violating the separation of powers preserved in the Constitution." *Id.* at \*2 (citing 28 U.S.C. § 2075 and explaining that, "[w]here the legislature has spoken authoritatively, it is not within the province of the judiciary to modify its determination").[14]

After a comprehensive and thorough review of the case law on the issue at bar, the Court agrees with and adopts the reasoning of the Eleventh Circuit's holding of *IAS* and its progeny. *See also In re Kwok*, 2024 WL 666646 (Bankr. D. Conn. Feb. 15, 2024); *In re Fundamental Long Term Care, Inc.*, 501 B.R. 784 (Bankr. M.D. Fla. 2013). In *IAS*, the court explained that Rule 9006(b) can be used to extend the limitation period in section 546(a), despite the absence of the word "statute" in the language of the Rule:

> Although "by these rules . . . or by order of court" does not explicitly encompass statutory timeframes, it does bring all of the Federal Rules of Bankruptcy Procedure under its umbrella. Not surprisingly, this would include Rule 7001, which defines an adversary proceeding as one "to recover money or property[,]" and Rule 7003, which governs the commencement of adversary proceedings.

---

[14] Under the Rules Enabling Act, 28 U.S.C. § 2075, "Congress empowered the Supreme Court of the United States to prescribe rules for the practice and procedure in cases under Title 11." *In re Stoecker*, 151 B.R. 989, 1004 (Bankr. N.D. Ill. 1992), *rev'd on other grounds*, 179 B.R. 532 (N.D. Ill. 1994).

*IAS*, 408 F.3d at 699 (quoting the language of the pre-revision Rule); *see also Kwok*, 2024 WL 666646, at *4 (discussing the Eleventh Circuit's analysis in *IAS)*. "To read a jurisdictional bar into [section] 546," the court said, "would lead to absurd results[.]" *IAS*, 408 F.3d at 699.

As to its conclusion that application of Rule 9006(b) to section 546(a) would violate the separation of powers maintained by the U.S. Constitution, the *Walnut Hill* court's analysis is misplaced. According to *Walnut Hill*, Congress "dictated [in the Rules Enabling Act] that the Bankruptcy Rules 'shall not abridge, enlarge, or modify any substantive right.'" 2018 WL 2672242, at *2 (quoting 28 U.S.C. § 2075). Limitation periods, however, are not typically substantive. *Kwok*, 2024 WL 666646, at *4. Although the distinction between procedural and substantive statutes of limitations is not always clear, courts have found that the limitation period imposed by section 546(a) is procedural "by its very nature" and "does not confer or enlarge a substantive right." *Collins v. J & N Rest. Assocs., Inc. (In re Mendolia)*, Case No. 12-60219, Adv. Pro. No. 14-80002, 2015 WL 475966, at *8 (Bankr. N.D.N.Y. 2015), *aff'd*, 2016 WL 1248888 (N.D.N.Y 2016), *aff'd*, 676 Fed. Appx. 18 (2d Cir. 2017); *see also, e.g., Moglia v. Inland Plywood Co. (In re Outboard Marine Corp.)*, 299 B.R. 488, 497–500 (Bankr. N.D. Ill. 2003); *Pryor v. Barbara (In re Rodriguez)*, 283 B.R. 112, 116–120 (Bankr. E.D.N.Y. 2001). Thus, "the Rules Enabling Act does not preclude Rule 9006(b) from providing a mechanism for extending the statute[] of limitation[s]" in section 546(a). *Kwok*, 2024 WL 666646, at *4.

Finally, the Insider Defendants argue by analogy that because courts have not permitted the use of Federal Rule of Civil Procedure 6(b) ("Rule 6(b)")—upon which Rule 9006(b) is based—to enlarge or otherwise alter statutes of limitations in non-bankruptcy civil cases, Rule

9006(b) cannot be applied to the matter here.[15] According to the Insider Defendants, the plain language of Rule 6(b) "arguably permits a broader application" since the Rule does not contain the "qualifier" "by these rules or by a notice given thereunder or by order of court" found in the prior version of Rule 9006(b). (Adv. Dkt. 32 at 8 ¶ 33.) Nevertheless, they say, "courts regularly reject the application" of Rule 6 to extend limitation periods in statutes. (*Id.*)

Because of the fundamental differences between bankruptcy cases (and related adversary proceedings) and other civil actions, the Insider Defendants' argument is unavailing. *See Kwok,* 2024 WL 666646, at *4. As the *Kwok* court adroitly explained, the limitation period in section 546(a) is dependent on the existence of a bankruptcy case. *Id.* Without the filing of a bankruptcy petition to initiate such a case, the court said, section 546(a) and other Code provisions setting forth similar statutory deadlines have "no effect." *Id.* (citing to 11 U.S.C. §§ 108(a), 546(a), 549(d)). According to the court, an adversary proceeding likewise relies on the existence of a related bankruptcy case. *Id.* In the same manner, the *Kwok* court explained, Rule 6 applies to statutes that govern procedure of a civil action after it has been filed. *Id.* (noting that the Second Circuit in *Joint Council Dining Car Employees Local 370 v. Delaware, Lackawanna & Western*

---

[15] Federal Rule of Civil Procedure 6(b) provides, in relevant part, as follows:

(b) **Extending Time.**

(1) ***In General.*** When an act may or must be done within a specified time, the court may, for good cause, extend the time:

(A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or

(B) on motion made after the time has expired if the party failed to act because of excusable neglect.

Fed. R. Civ. P. 6(b)(1).

*Railroad Company,* 157 F.2d 417 (2d Cir. 1946), considered and rejected the argument that "Rule 6(a)'s proscribed methodology for computation of time applied to limitation periods existing independent of the filed civil action"). In this matter, the Insider Defendants ignore the manifest difference between a bankruptcy case and a traditional civil action. *See id.*

Having concluded that the statute of limitations imposed by section 546(a) may be extended pursuant to Rule 9006(b), the Court now turns to whether there was cause for the extension, based on the facts and circumstances in this matter. There is a dearth of case law on the meaning of "for cause" in the context of Rule 9006(b). Courts generally agree, however, that the "for cause" standard under the Rule is less rigorous than the one required to invoke equitable tolling. *In re Campbellton-Graceville Hosp. Corp.*, 616 B.R. 177, 188 n.49 (Bankr. N.D. Fla. 2019); *Fundamental Long Term Care*, 501 B.R. at 789. To determine whether "cause" exists to extend a statute of limitations prior to expiration under Rule 9006(b), courts consider "whether the debtor failed to cooperate with the bankruptcy trustee or [in fact] sought to impede the trustee's investigation and liquidation of assets for the benefit of creditors."[16] *Kwok*, 2024 WL 666646, at \*5. Indeed, "'a bankruptcy trustee must rely almost entirely on a third party (the debtor) to provide the information necessary to uncover avoidable transfers'"; thus, "fairness to defendants is the animating concern among courts that decline to extend statutes of limitation[s] under Rule 9006(b)." *Id.* (quoting *Moratzka v. Pomaville (In re Pomaville)*, 190 B.R. 632, 637 (Bank. D. Minn. 1995)).

---

[16] The *Kwok* court noted that these are the equitable considerations examined by other courts in the context of equitable tolling but suggested that they are equally relevant when assessing whether the "for cause" standard under Rule 9006(b) has been satisfied. *Kwok*, 2024 WL 666646, at \*5.

In his Tolling Motion and related reply,[17] the Trustee argued that an extension of the limitation period set forth in section 546(a) was necessary to allow him to complete discovery in order to establish that avoidance actions could be brought to recover transferred or concealed assets for the bankruptcy estate and provide a distribution for creditors. According to the Trustee, he was unable to conclude his investigation before the expiration of the deadline, and thus file an avoidance action, in large part because of the obstructive tactics used to avoid discovery by both the Debtors and certain Insider Defendants.

The allegations in the documents of record in this matter reveal that the Trustee undertook substantial discovery efforts in his rigorous investigation and pursuit of avoidance actions, all of which were met with relentless resistance by the Debtors and certain Insider Defendants. From the outset of the bankruptcy case, the Debtors' disclosure of information was insufficient and dilatory. Their initial schedules were deficient and inaccurate, which required the subsequent filing of amended schedules (*see* Bankr. Dkt. 13) and motions to extend the deadline for filing complaints to object to discharge by both the Trustee and the U.S. Trustee (Bankr. Dkts. 32, 33), as well as numerous continuances of the 341 meeting of creditors (*see* Bankr. Dkts. 7, 19, 24, 30, 31, 39). On October 31, 2022, after the adjournment of the final session of the 341 meeting, the Trustee filed an initial asset report, in which he itemized the assets of the estate and their corresponding net values, listed "Potential Avoidance Actions," and indicated his investigation of another such action. (Bankr. Dkt. 66.)

---

[17] The reply in support of the Trustee's Tolling Motion was filed in the first round of briefing on the issue at bar and also attached to his response to the instant motions to dismiss. (Bankr. Dkt. 148; Adv. Dkt. 41, Ex. 3.)

Discovery efforts did not begin in earnest until many months later, when Iglesias retained Factor to represent him on July 14, 2023. A review of the bankruptcy docket discloses that the delay was the result of the protracted, ultimately unsuccessful efforts of Iglesias's former counsel to rectify his failure to timely move for an extension to object to the Debtors' discharge or to the dischargeability of debt allegedly owed to Iglesias. In August 2023, once that matter was concluded and shortly after Factor was substituted for Iglesias's former attorney, he engaged in various discovery activities—in his capacity as counsel for both Iglesias and the Trustee—to investigate the Debtors' financial affairs as well as potential avoidance actions. Among those activities, Factor filed two 2004 motions—one in which he sought to examine Gamal, his adult children, and others and a second in which he requested authorization to conduct examinations of various financial institutions at which the Debtors and certain Insider Defendants apparently had accounts. (Bankr. Dkts. 100, 110.) Subsequently, on November 2, 2023, Factor issued subpoenas to the individual and financial institution examinees, consistent with the orders granting the 2004 motions. (Bankr. Dkts. 114, 115.) On March 25, 2024, he conducted a deposition of the Debtors' son James and began to depose their daughter Deborah; her examination ended suddenly, however, when she had a "breakdown" and would not continue. Gamal's deposition did not take place at all, and Deborah's was never concluded, both asserting various medical conditions for their inability to be examined.

The discovery-related actions taken by the Trustee were met with numerous objections by the Debtors, certain Insider Defendants, and others, who fought him every step of the way. That opposition required the Trustee to file various briefs in support of his discovery requests, including a written response to the Debtors' motion to quash his subpoenas. As to the latter, the Trustee also had to make oral argument over the course of two court hearings advocating for the discovery he

was seeking through the subpoenas and ultimately negotiate and draft an agreed order granting in part and denying in part the motion to quash.

The gravamen of the Debtors' objection to all discovery in the bankruptcy case is that extensive discovery had already been obtained in the state court case that was filed in 2016. Specifically, the Debtors contend that Iglesias received, either through direct production or by subpoena, almost 17,000 pages of financial documents and records during the state court litigation and that the Debtors themselves voluntarily produced 600 pages of financial documents to the Trustee. (*See, e.g.*, Bankr. Dkt. 108 ¶¶ 6, 8.) The assertions in the relevant documents in this matter do not support the Debtors' claims.

According to declarations of Matthew M. Saffer and Elizabeth M. Al-Dajani, Iglesias's former attorneys in the state court suit,[18] scant discovery took place in that action. (Bankr. Dkt. 148, Exs, 1 & 2 to Ex. A.) The Debtors produced very few documents in the state court case from 2016 to 2022, Al-Dajani said, and most of the materials received by Iglesias were obtained through third-party discovery that he served. (Bankr. Dkt. 148, Ex. 2 to Ex. A ("Al-Dajani Decl.") ¶ 10.) A majority of the 17,000 pages produced consisted of bank account statements from remote time periods, the most current from 2016, and few, if any, documents were produced after 2017. (Bankr. Dkt. 148, Ex. A ¶¶ 9, 27.) Both Saffar and Al-Dajani also asserted that no depositions were taken of any of the defendants in the state court case. (Bankr. Dkt. 148, Ex. 1 to Ex. A ("Saffar Decl.") ¶¶ 4, 8; Al-Dajani Decl. ¶ 11.) Thus, neither of the Debtors was ever examined under oath.

---

[18] Al-Dajani represented Iglesias and his medical practice in the state court suit from June 6, 2017 to October 1, 2020. (Bankr. Dkt. 148, Ex. 2 to Ex. A ¶ 2.) Saffar provided representation for the plaintiffs in the civil action from October 1, 2020 to July 21, 2022. (*Id.*, Ex. 1 to Ex. A ¶ 2.) Both declarations were made in support of the Trustee's motion for an order authorizing the Rule 2004 examination of James, Anthony Realty, Gamal, Deborah, Masterpiece, and others filed on August 16, 2023. (Bankr. Dkt. 100; *see also* Bankr. Dkt. 148, Ex. A.)

In addition, Iglesias's former attorneys said that the Debtors engaged in a pattern of delay throughout the pendency of the state court action in an effort to hinder the proceedings, prevent the production of documents, and postpone depositions. (Al-Dajani Decl. ¶ 4.) To those aims, the Debtors filed baseless motions to dismiss complaints against them, meritless counterclaims, and unfounded motions to reconsider denials of their motions and claims. (Saffar Decl. ¶ 8; *see also* Bankr. Dkt. 148, Ex. A ¶ 10.) They also refused to respond to discovery, would not answer pleadings, and ignored deadlines. (Al-Dajani Decl. ¶ 9.) Several third-party witnesses associated with the Debtors also failed to timely respond to Iglesias's subpoenas, requiring Al-Dajani to file three separate petitions for rule to show cause. (*Id.* ¶ 12.) In addition to their nonresponsive and obstructive pleading practices, Al-Dajani stated that the Debtors and others engaged in a pattern of delay through attorney substitution.[19] (*Id.* ¶¶ 5–7.) By changing counsel numerous times, she explained, the Debtors and others impeded the discovery process, thereby foiling Iglesias's attempts to advance the state court case to trial. (*Id.* ¶ 5.)

Ultimately, on March 9, 2022, the judge presiding over the state court action at the time denied Debtors' counsel's request for eighteen months to complete discovery and file dispositive motions (Bankr. Dkt. 148, Ex. A ¶ 11) and made it clear that she intended to move the proceedings ahead by setting "a short discovery schedule, a trial date, and other pertinent dates following a short continuance" (Saffar Decl. ¶ 5). Saffar says that not long after, Debtors' counsel called him and "basically threatened bankruptcy if he was going to have to proceed with the litigation." (*Id.* ¶ 6.) On March 30, 2022, shortly before the state court judge could set trial and other dates, the

---

[19] According to Al-Dajani, Gamal and Masterpiece were represented by at least five firms during the first four years of the state court case, and Analida changed counsel no fewer than four times. (Al-Dajani Decl. ¶¶ 5, 6.) The substitutions of counsel, she said, were often filed after entry of court orders aimed at moving the case forward. (*Id.* ¶ 6.) The Debtors' son James also engaged in this pattern of delay, she said. (*Id.* ¶ 7.)

Debtors filed their petition for relief under chapter 7 of the Bankruptcy Code. (*Id.* ¶ 8; Bankr. Dkt. 1.)

Based on the foregoing, the Court finds that the Debtors and certain Insider Defendants failed to cooperate with the Trustee and, in fact, sought to hinder and delay his investigation of the Debtors' financial affairs and potential avoidance actions that could be brought to benefit creditors of the bankruptcy estate. As such, the Court concludes that "cause" existed to extend the statute of limitations imposed by section 546(a), prior to its expiration, under Rule 9006(b). Accordingly, the Trustee's complaint was timely filed, in accordance with the extension set by the Court in the Tolling Order, and the Insider Defendants' motion to dismiss the complaint as untimely—based on their claim that the statute of limitations in section 546(a) cannot be extended by Rule 9006(b)— is denied.

## B.   Equitable Tolling

As reflected in their various pleadings, the parties in this matter seem confused as to the appropriate standard to apply to the dispute at bar. Specifically, in his Tolling Motion, the Trustee sought an order equitably tolling the statute of limitations imposed by section 546(a), and Cantore's motion to dismiss the Trustee's complaint as untimely is based entirely on the doctrine of equitable tolling. The Insider Defendants, however, argue that equitable tolling may not be considered prospectively—that the doctrine may be applicable only in the context of a motion to dismiss raising a statute of limitations defense to a complaint in an adversary proceeding. Because there was no adversary proceeding pending, either when the Trustee's Tolling Motion was filed or the Tolling Order was entered, they say, equitable tolling was not yet ripe for determination, and the proper consideration was, instead, whether the statute of limitations could be extended.

27

The Court agrees with the Insider Defendants. As the Eleventh Circuit suggested in *IAS* and other courts have explained, equitable tolling applies only after the statute of limitation period has expired. *See IAS*, 408 F.3d at 700–01; *Kwok*, 2024 WL 666646, at *8–9 (granting the movants' request to extend deadlines pursuant to Rule 9006(b) but denying their motion "insofar as it seeks an order equitably tolling the statute[] of limitations set forth by section[] . . . 546(a), . . . without prejudice to the Trustee raising equitable tolling or other equitable arguments in response to a defense that an adversary proceeding commenced by the Trustee is time-barred"); *Walnut Hill*, 2018 WL 2672242, at *2 (finding that equitable tolling is premature "outside the context of an evidentiary hearing . . . in [an] adversary proceeding against specific defendants, once a statute of limitations defense has been asserted"); *Fundamental Long Term Care*, 501 B.R. at 789 (explaining that "equitable tolling presumably comes into play after the limitations period has expired"). Despite this conclusion, some courts faced with a request for prospective extensions of a statute of limitations have proceeded to conduct an equitable tolling analysis in "an abundance of caution." *IAS*, 408 F.3d at 700–02; *Fundamental Long Term Care*, 501 B.R. at 789–91. As a result of the parties' confusion as to the proper standard to apply here and the Insider Defendants' concerns regarding the "much lower bar" required for extension under Rule 9006(b) (Adv. Dkt. 32 ¶ 34), the Court will also consider, in "an abundance of caution," the application of equitable tolling to the instant matter.

Unlike the issue of prospective extension under Rule 9006(b)(1)(A), both the Seventh Circuit and the United States Supreme Court have opined on the application of and appropriate grounds for equitably tolling a statute of limitations after its expiration. *See, e.g., Holland v. Florida*, 560 U.S. 631, 645–46 (2010) (explaining that "a nonjurisdictional federal statute of limitations is normally subject to a rebuttable presumption in *favor* of equitable tolling" (internal

28

quotations omitted)); *Dent v. Charles Schwab & Co.*, 121 F.4th 1352, 1353 (7th Cir. 2024) (discussing the showing that a litigant seeking equitable tolling must make). As to section 546(a) in particular, the Seventh Circuit has expressly found that the statute of limitations imposed by that provision is "subject to equitable tolling." *Fogel v. Shabat (In re Draiman)*, 714 F.3d 462, 466 (7th Cir. 2013); *see also Ernst & Young v. Matsumoto (In re United Ins. Mgmt., Inc.)*, 14 F.3d 1380, 1385 (9th Cir. 1994) (noting that "[e]very court that has considered the issue has held that equitable tolling applies to § 546(a)").

Equitable tolling is not a common remedy. It is reserved for "rare instances in which a plaintiff was 'prevented in some extraordinary way from filing his complaint in time.'" *Blanche v. United States*, 811 F.3d 953, 962 (7th Cir. 2016) (quoting *Threadgill v. Moore U.S.A., Inc.*, 269 F.3d 848, 850 (7th Cir. 2001)). When equitable tolling is sought, the plaintiff is the one who generally "bears the burden to establish that (1) [he] diligently pursued [his] claim; and (2) some extraordinary circumstances prevented [him] from timely filing [his] complaint." *Id.* (internal quotations omitted).

Equitable tolling is often confused with fraudulent concealment on the part of the defendant. *Valdez ex rel. Donely v. United States*, 518 F.3d 173, 182–83 (2d Cir. 2008). The doctrine does *not*, however, require any wrongdoing by a defendant. *Id.* at 183. Rather, the relevant question is "whether a reasonable plaintiff [under] the [same] circumstances would have been aware of the existence of a cause of action." *Id.* (internal quotation omitted).

### (i)  Diligence

Under the first prong of the equitable tolling standard, the Trustee must demonstrate that he was reasonably diligent in pursuing his rights throughout the limitation period and until he finally filed his adversary complaint. *See Carpenter v. Douma*, 840 F.3d 867, 870 (7th Cir. 2016).

"One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984). The diligence required for purposes of equitable tolling is "reasonable diligence," not "maximum feasible diligence." *Holland*, 560 U.S. at 653–54 (internal quotations omitted) (noting that the analysis requires courts to conduct an "'equitable, often fact-intensive' inquiry," considering "in detail" the unique facts of each case to determine whether a litigant's efforts were reasonable in light of his circumstances). Thus, the relevant question in this matter is whether a trustee acting with reasonable diligence would have acted as the Trustee did here.

The few courts in this district that have considered the question of the diligence demanded of a bankruptcy trustee agree that a trustee has a duty to collect and conserve known assets of the estate, including any legitimate causes of action made known to him, and to investigate the debtor's financial affairs. *Lujano v. Town of Cicero*, No. 07 C 4822, 2012 WL 4499326, at \*6 (N.D. Ill. Sep. 28, 2012); *Heyman v. Dec (In re Dec)*, 272 B.R. 218, 230–31 (Bankr. N.D. Ill. 2001). Nevertheless, a trustee is required to conduct only searches that are realistic in the ordinary course of the performance of his duties. *Lujano*, 2012 WL 4499326, at \*6–7 (noting that the "reality" is that bankruptcy "trustees have limited time and money to devote to such efforts"); *Dec*, 272 B.R. at 231. A trustee need not pursue all leads in a case, nor is he required to reconstruct the financial affairs of the debtor. *Dec*, 272 B.R. at 230–31. In fact, a trustee may rely on a debtor's sworn schedules and statements, and such reliance does not preclude equitable tolling. *Id.* at 231.

In conducting their "reasonable diligence" analysis, courts must examine when a party should have become aware of the facts that form the basis of his claim and, once that party received actual notice of such facts, whether he was reasonably diligent in filing a complaint. *See, e.g., Blanche*, 811 F.3d at 962; *United Ins. Mgmt.*, 14 F.3d at 1387 (refusing to toll the statute of

30

limitations imposed by section 546(a) because the bankruptcy trustee was insufficiently diligent); *Krakowski v. Am. Airlines, Inc. (In re AMR Corp.)*, 598 B.R. 365, 381–82 (Bankr. S.D.N.Y. 2019).

In this matter, the Defendants argue that the Trustee did not diligently pursue his claims against them prior to the expiration of the section 546(a) limitation period, thus precluding his request for equitable tolling. Specifically, the Defendants contend that the Trustee failed to file his own Rule 2004 motions against the Debtors or the Insider Defendants in the twenty-four-month period before the limitation period expired, never requested any information from the Debtors after their "voluntary" submission of financial documents, did not file a motion seeking to compel the cooperation of the Debtors, and retained counsel only at the "eleventh hour"— thirty days before expiration of the period. Although true, the Defendants' allegations paint an inaccurate picture of the circumstances in this matter, and their argument that these allegations demonstrate that the Trustee did not diligently pursue his claim is without merit.

As discussed at length *supra*, the Trustee competently and diligently performed his duties in this case, conducting reasonable and realistic searches shortly after the Debtors' filing of their bankruptcy petition in an effort to both collect and conserve the Debtors' assets and investigate their financial affairs. To those aims, the Trustee conducted multiple sessions of the 341 meeting of creditors and ultimately filed a report in October 2022, enumerating the assets of the Debtors' estate and indicating that there were potential avoidance actions to be pursued. The filing of Rule 2004 motions and other related discovery—by the Trustee or anyone else—was initially delayed because, almost immediately after the Petition Date, Iglesias's counsel filed a motion for relief from the automatic stay in order to continue the state court litigation, as well as a related motion to address his failure to timely request an extension to file a complaint under sections 523 and/or 727 of the Bankruptcy Code. Only after those matters were resolved did Iglesias retain Factor to

represent him—in July of 2023. Shortly thereafter, Factor zealously began his investigation of the Debtors' financial affairs and potential avoidance actions. He filed two Rule 2004 motions, issued numerous subpoenas, conducted a deposition of the Debtors' son James, and began to depose their daughter Deborah. All of these actions were rigorously opposed by the Debtors, certain Insider Defendants, and others. On March 22, 2024, the Trustee, realizing that he needed to conduct further investigation of facts that might form the basis of his claim, filed his Tolling Motion, seeking to toll the limitation period in section 546(a) to allow him to complete his discovery and then file an avoidance action on behalf of the estate.

The Insider Defendants argue that Factor sought discovery in his capacity as attorney for Iglesias—not on behalf of the Trustee—and that his actions as Iglesias's counsel cannot be used to establish the Trustee's diligence for purposes of equitable tolling. The Court disagrees. First, the Insider Defendants' contention is unsupported by case law, and they in fact have not cited to any authority for their position. Moreover, although an avoidance action would require the Trustee to serve as plaintiff, it was entirely appropriate for Iglesias to spearhead discovery at the earlier stages of the case by investigating targets that he believed could lead to pertinent and useful information. *See In re Martino*, No. 11-31115 MER, 2011 WL 5856327, at *2 (Bankr. D. Colo. Nov. 17, 2011) (explaining that "creditors do not have to rely solely and exclusively on the efforts of the trustee," even if the information being sought "may ultimately be incorporated in a cause of action exclusive to the trustee" (internal quotation omitted)); *see also In re Irwin*, No. 10-14407 ELF, 2010 WL 4976226, at *1 n.1 (Bankr. E.D. Pa. Dec. 2, 2010) (noting that Rule 2004 "does not limit discovery rights to the trustee[;] [r]ather, it is a discovery tool that may be invoked by 'any party in interest'"). Indeed, for reasons both logical and pragmatic, it is not uncommon for chapter 7 trustees to step back to allow creditors to take the lead in discovery. Doing so permits a

32

trustee to both avoid duplicative efforts and conserve resources. Accordingly, the Court finds that a reasonably diligent trustee would have allowed the dispute among the Debtors, the Insider Defendants, and Iglesias to unfold before expending time and money to pursue actions on behalf of the bankruptcy estate.

Finally, Cantore argues that the Trustee was on notice of a potential avoidance claim against it and was not diligent in pursuing that claim. Specifically, Cantore contends that the Debtors disclosed in their bankruptcy documents that they sold a parcel of undeveloped property in Oak Brook, Illinois for $300,000 on March 9, 2021 and that $90,000 of the net sales proceeds was paid to Cantore for the balance due.[20] (Adv. Dkt. 27 ¶ 31; Bankr. Dkt. 1 at 46.) Notwithstanding the foregoing, the disclosed Cantore transfer was only one of many that the Trustee ultimately discovered were made by the Debtors. "The fact that the Trustee may [have been] generally (or perhaps even specifically) aware of some claims does not mean [that he was] aware of all of [his] potential claims." *See Fundamental Long Term Care*, 501 B.R. at 791. Until further information about the financial affairs of the Debtors and the Insider Defendants was gathered and a complete account of the Cantore transfers was revealed, the Court finds that the Trustee's decision to wait to pursue avoidance actions against Cantore does not support its argument that the Trustee inexcusably slept on information of the alleged transfers or otherwise failed to act with reasonable diligence. *See id.* (explaining that the "only reason not to enlarge the § 546(a) deadline in this case is if, as the targets claim, the Trustee is already in a position to bring *all* of her avoidance actions" (emphasis added)).

---

[20] Cantore alleges in error that the disclosure was made by the Debtors in their bankruptcy petition, rather than in their Statement of Financial Affairs. (*See* Adv. Dkt. 27 ¶ 31.)

For all of the reasons above, the Court finds that the Trustee was reasonably diligent in pursuing his rights against the Insider Defendants and Cantore throughout the limitation period and until he finally filed his adversary complaint.

### (ii) Extraordinary Circumstances

Turning to the second prong of the equitable tolling analysis, "'[e]xtraordinary circumstances' are present only when an 'external obstacle' beyond the party's control 'stood in [its] way'" and caused the delay, *Lombardo v. United States*, 860 F.3d 547, 552 (7th Cir. 2017) (quoting *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 256 (2016))—typically by preventing that party from obtaining "vital information bearing on the existence of his claim" *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990). "[T]he circumstances that caused a party's delay must be both extraordinary *and* beyond [his] control." *Lombardo*, 577 F.3d at 552 (internal quotations omitted). When determining whether extraordinary circumstances existed that prevented a party from meeting a deadline, the Seventh Circuit employs a "flexible standard that encompasses all of the circumstances that he faced and the cumulative effect of those circumstances." *Carpenter*, 840 F.3d at 872 (internal quotations omitted). As noted above in the context of Rule 9006(b), a bankruptcy case "presents a rather different slant on equitable tolling." *Dec*, 272 B.R. at 227 (quoting *Pomaville*, 190 B.R. at 637).

> In the typical situation, it is the debtor's conduct rather than the defendant's conduct which invokes equitable tolling. In some senses, this is unfair to the defendant. On the other hand, unlike the usual civil case where a plaintiff at least has the advantage of being a party to the underlying transaction, a bankruptcy trustee must rely almost entirely on a third party (the debtor) to provide the information necessary to uncover avoidable transfers.

*Id.*

34

The Seventh Circuit has held that equitable tolling applies in two situations: (1) when a fraud goes undiscovered "even though the defendant does nothing to conceal it," and (2) when a fraud goes undiscovered "because the defendant has taken positive steps after commission of the fraud to keep it concealed." *Suslick v. Rothschild Sec. Corp.*, 741 F.2d 1000, 1004 (7th Cir. 1984), *overruled on other grounds*, *Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385 (7th Cir. 1990)*; see also Steege v. Lyons (In re Lyons)*, 130 B.R. 272, 280 (Bankr. N.D. Ill. 1991) (citing *Suslick*). In the first situation, "the plaintiff must exercise due diligence in attempting to uncover the fraud." *Suslick*, 741 F.2d at 1004. In the second, the limitation period is tolled until the plaintiff's actual discovery of the fraud. *Id.*

In this matter, there were extraordinary circumstances for purposes of equitable tolling because the Debtors and Insider Defendants delayed discovery and took other actions that prevented the Trustee from completing his discovery in order to determine whether to file avoidance actions on behalf of the estate. Indeed, the Trustee alleges—and the record shows—that the Defendants fraudulently concealed facts that would have allowed the Trustee to discover that he had a claim. *See Combined Res. Interiors, Inc. v. Frankl (In re Frankl)*, Case No. 18-11283 (MKV), Adv. Pro. No. 18-01619 (MKV), 2019 WL 3060073, at *5 (Bankr. S.D.N.Y. July 11, 2019) (explaining that "[e]xtraordinary circumstances may be present" in such a case), *aff'd*, 620 B.R. 220 (S.D.N.Y. 2020). Their disclosure of information—from the inception of and throughout the bankruptcy case—was deficient and dilatory, and they lodged often baseless objections to virtually every discovery-related action that the Trustee took, in an apparent attempt to run down the clock on the deadline for filing avoidance actions. Of particular note, the Debtors objected to all discovery in the bankruptcy case by falsely asserting that extensive discovery already had been obtained in the state court action. In that litigation, they engaged in a pattern of delay, constantly

35

prolonging and avoiding their discovery obligations in an effort to hinder the discovery process and ultimately keep the case from going to trial. Their extraordinary delay tactics—both here and in the state court case—are precisely the type of "extraordinary circumstances" required for equitable tolling of section 546(a)'s statute of limitations. *See, e.g., id.* (stating that "equitable tolling is proper where the movant has been misled or evidence has been concealed").

Tolling the statute of limitations is an equitable remedy, and the equities here weigh in favor of enlarging the limitation period in section 546(a). *See Fundamental Long Term Care*, 501 B.R. at 791. If the Court had not enlarged the period for bringing the complaint in this matter, the opposition of the Debtors and certain Insider Defendants during the discovery process would have effectively been rewarded, creating a "perverse incentive for targets of avoidance actions . . . to oppose discovery." *See id.*

In sum, the Court finds that it had the authority to extend the limitation period in section 546(a) pursuant to Rule 9006(b) and that, on the facts and circumstances in this matter, there was cause do to so. The Court further finds that, to the extent that the doctrine of equitable tolling is applicable, the Trustee was entitled to equitable tolling of the 546(a) statute of limitations to August 1, 2024, to allow him to complete his discovery and file an avoidance action. Thus, the Trustee's adversary complaint was timely filed, and the Defendants' motions to dismiss the complaint as untimely are denied.

### 2.  Other Arguments Made by the Insider Defendants and Cantore

In addition to their primary contentions under Rule 9006(b) and the doctrine of equitable tolling, the Defendants advance other arguments in support of their motions to dismiss. The Court addresses each of those arguments in turn.

## A. Notice

First, the Insider Defendants argue that the Tolling Motion was not served upon defendant Selective Liquors and that, by seeking an extension of the statute of limitations without giving Selective Liquors an opportunity to defend its rights, the Trustee violated the Due Process Clause. (Adv. Dkt. 32 ¶¶ 39, 40.) As such, they say, the Tolling Order is void as to Selective Liquors. This argument is unavailing.

"Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[21] *Lightspeed Media Corp. v. Smith,* 761 F.3d 699, 704 (7th Cir. 2014) (internal quotations omitted). Actual notice "more than satisfie[s]" the due process standard. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010); *see also Jones v. Flowers*, 547 U.S. 220, 225 (2006) (stating that "due process does not require actual notice"). Actual notice is defined as "such notice as is positively proved to have been given to a party directly and personally, or such as he is presumed to have received personally because the evidence within his knowledge was sufficient to put him upon inquiry." *Black's Law Dictionary* 1061–62 (6th ed. 1990).

Based on the facts and circumstances in this matter, the Court finds that Selective Liquors received actual notice of the Tolling Motion. The bankruptcy docket reflects that the motion was filed on March 22, 2024. (Bankr. Dkt. 141.) According to the certificate of service filed with the motion, all parties receiving notice through the Court's Case Management/Electronic Case Files

---

[21] The Fifth Amendment to the United States Constitution provides, in relevant part, that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.

37

("CM/ECF") system were served with a copy of the motion, and service was provided to the Debtors via U.S. mail.[22] (*See id.* at 3.) Selective Liquors had neither appeared in the bankruptcy case nor requested notice. Thus, there was no requirement to serve Selective Liquors with the Tolling Motion.

Despite not having been served, however, Selective Liquors had actual notice of the Tolling Motion and of the Trustee's ongoing investigation into transactions involving Selective Liquors. There is no dispute that Deborah, the member and manager of Selective Liquors, received notice of the motion. In fact, she had been examined under Rule 2004 by Trustee's counsel on March 25, 2024, just after the Tolling Motion had been filed and prior to its presentation to the Court. (*See* Adv. Dkt. 41, Ex. 4.) At that examination, Deborah was questioned about Selective Liquors, the nature of the business, its financing, and the buildout of the liquor store, among other issues. (*Id.*) Through Deborah, the sole owner of the business, Selective Liquors was "presumed to have received [notice] personally" because its knowledge of the Tolling Motion was sufficient to put the company "upon inquiry" and provide it the opportunity to present its objections and otherwise participate in the relevant proceedings. Accordingly, the failure of the Trustee to specifically serve Selective Liquors did not make the Tolling Order void as to Selective Liquors, and the Insider Defendants' request to dismiss the complaint against Selective Liquors on that basis is denied.[23]

---

[22] Konstantine T. Sparagis, counsel for all of the Insider Defendants when the Tolling Motion was noticed, including Deborah and Selective Liquors, was among those served through the Court's CM/ECF system. (Bankr. Dkt. 141 at 3.)

[23] In its reply in support of its motion to dismiss, Cantore argues, for the first time, that it was not served or given notice of the Tolling Motion and, therefore, had no opportunity to respond to or litigate the motion. (Adv. Dkt. 43 ¶ 11.) An argument raised for the first time in a reply brief is waived. *Gonzales v. Mize*, 565 F.3d 373, 382 (7th Cir. 2009). Thus, the Court need not address this argument. Waiver aside, the Court notes that Cantore, like Selective Liquors, neither appeared in the bankruptcy case nor requested notice. Therefore, there was no requirement to serve Cantore with the Tolling Motion. In any event, Cantore received notice of the Trustee's adversary complaint and was given the opportunity to present its position in connection with the Tolling Motion by filing and briefing its own motion to dismiss.

**B.  The Timing of the Transfers to Cantore**

In addition to its contention that the Trustee did not file a timely avoidance action within section 546(a)'s limitation period, Cantore makes other arguments based on the timing of the Debtors' transfers that the Trustee seeks to avoid and recover from Cantore. First, Cantore argues that the initial payments totaling $112,768.26 for the liquor store buildout were made in 2019 and thus did not fall within the two-year period before the Debtors' petition was filed as required by section 548(a)(1) of the Bankruptcy Code. (Adv. Dkt. 27 ¶¶ 40–42.) Second, Cantore asserts that some of the alleged transfers were made prior to the four-year period for fraudulent transactions under the Illinois Uniform Fraudulent Transfer Act (the "UFTA"). As a result, Cantore says that all of the transfers that it allegedly received in this matter cannot be avoided by the Trustee. (*Id.* ¶¶ 53–56.) These arguments fail.

The Trustee's complaint seeks to avoid and recover transfers made by the Debtors to Cantore pursuant to, *inter alia*, sections 548(a)(1)(A) and 544(b) of the Bankruptcy Code and section 5(a) of the UFTA. Section 548(a)(1) of the Code provides, in relevant part, as follows:

> The trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made . . . on or within 2 years before the date of the filing of the petition, if the debtor . . . made such transfer . . . with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made . . . , indebted.

11 U.S.C. § 548(a)(1)(A). Section 544(b) provides, in turn, that a "trustee may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502." 11 U.S.C. § 544(b)(1). Under section 544(b)(1), "[a] trustee stands in the shoes of an actual unsecured

creditor and becomes subject to the same rights and limitations that the actual unsecured creditor would be subject to outside of bankruptcy." *Ebner v. Kaiser (In re Kaiser)*, 525 B.R. 697, 708 (Bankr. N.D. Ill. 2014) (explaining that the trustee's power under section 544(b) is derivative of that of an actual unsecured creditor under the applicable law). The provision allows a "trustee to do in a bankruptcy proceeding what a creditor would have been able to do outside of bankruptcy— except the trustee will recover the property for the benefit of the estate." *In re Equip. Acquisition Res., Inc.*, 742 F.3d 743, 746 (7th Cir. 2014). Accordingly, "if any unsecured creditor could reach an asset of the debtor outside bankruptcy, the Trustee can use § 544(b) to obtain that asset for the estate." *In re Leonard*, 125 F.3d 543, 544 (7th Cir. 1997). Here, the UFTA is the "applicable law" referred to in section 544(b). Under the UFTA, a claim brought under section 5(a) or 6(a) of the statute must be commenced "within 4 years after the transfer was made."[24] 740 ILCS 160/10(a) & (b).[25]

---

[24] Subsections (a)(1) and (2) of section 5 of the UFTA provide, in relevant part, as follows:

(a)  A transfer made . . . by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made . . . , if the debtor made the transfer . . . :

    (1)  with actual intent to hinder, delay, or defraud any creditor of the debtor; or

    (2)  without receiving a reasonably equivalent value in exchange for the transfer . . . , and the debtor:

        (A)  was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

        (B)  intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

740 ILCS 160/5(a)(1) & (2). Subsection (a) of section 6 of the UFTA provides, in turn, that "[a] transfer made . . . by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made . . . if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer." 740 ILCS 160/6(a).

[25] A claim under section 5(a)(1), the actual fraud provision of the UFTA, may be brought later than four years after the transfer was made if commenced "within one year after the transfer . . . was or could reasonably have been

40

In this matter, the Debtors filed their bankruptcy petition on March 30, 2022. Thus, the Trustee may seek to recover transfers made as early as March 30, 2018.[26] Cantore contends that the initial payments for the liquor store buildout were made in 2019.[27] (Adv. Dkt. 27 ¶ 41.) This claim corresponds with the Trustee's assertion that those payments were made between October 15, 2018 and June 17, 2020. (Adv. Dkt. 1, Ex. G.) The final payment of $90,000 to satisfy the balance due to Cantore for the construction project was made, in turn, on April 1, 2021. (*Id.*) Because the Trustee's avoidance powers can reach transfers made up to four years prior to the Petition Date, all of the Cantore transfers that the Trustee is seeking to avoid and recover occurred within the appropriate time periods. As a result, Cantore's motion to dismiss on the grounds that those transfers fell beyond the applicable statutes of limitations is denied.

### C. Reasonably Equivalent Value for the Cantore Transfers

Finally, Cantore argues that Count IV of the complaint must be dismissed because the Trustee failed to adequately plead that the Debtors did not receive reasonably equivalent value for the construction work provided by Cantore on the liquor store buildout project. (Adv. Dkt. 27 ¶¶ 48–52.) The Court does not agree.

Section 548(a)(1)(B) of the Bankruptcy Code provides, in relevant part, that a trustee "may avoid any transfer of an interest of the debtor in property" if the debtor, among other things,

---

discovered by the claimant." 740 ILCS 160/10(a). Sections 5(a)(2) and 6(a), the constructive fraud provisions of the statute, require the commencement of the claim within four years without exception. 740 ILCS 160/10(b).

[26] Cantore erroneously uses the date that the Trustee filed his adversary complaint in arguing that the transfers that occurred before August 1, 2020 should be dismissed. (Adv. Dkt. 27 ¶ 56.) The date of the filing of the bankruptcy petition is the one that establishes the reach-back period. *See, e.g., Kapila v. TD Bank, N.A., (In re Pearlman)*, 460 B.R. 306, 314–15 (Bankr. M.D. Fla. 2011).

[27] Cantore asserts that those initial payments totaled $111,168.25—not $112,768.25 as the Trustee claims. (Adv. Dkt. 27 ¶ 41.)

"received less than a reasonably equivalent value in exchange for such transfer." 11 U.S.C. § 548(a)(1)(B). Similarly, sections 5(a) and 6(a) of the UFTA provide, in pertinent part, that "[a] transfer made . . . by a debtor is fraudulent . . . if the debtor make the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer." 740 ILCS 160/5(a)(2), 6(a). Because the provisions of the UFTA are analogous and parallel to those in section 548, "findings made under the Bankruptcy Code are applicable to actions under the UFTA." *Grochocinski v. Knippen (In re Knippen)*, 355 B.R. 710, 731–32 (Bankr. N.D. Ill. 2006) (internal quotations omitted), *aff'd*, 2007 WL 1498906 (N.D. Ill. May 18, 2007).

The Bankruptcy Code does not define the term "reasonably equivalent value." The Seventh Circuit, however, has explained that the test used to determine "reasonably equivalent value" requires the court to consider the value of what was transferred compared to the value that the debtor received. *Barber v. Golden Seed Co.*, 129 F.3d 382, 387 (7th Cir. 1997). "The determination of 'reasonably equivalent value' is not a fixed mathematical formula." *Knippen*, 355 B.R. at 725. Rather, to decide whether there was reasonably equivalent value under section 548(a)(1)(B), a court must first "determine whether the debtor received value[] and then examine whether the value [was] reasonably equivalent to what the debtor gave up." *Id.* at 726.

In this matter, the Court finds that the Trustee sufficiently alleged that the Debtors did not receive a reasonably equivalent value for the payments transferred to Cantore for the work it performed under the construction contract. Specifically, the Trustee alleges in the complaint that the work done by Cantore was performed not for the Debtors but for the benefit of Selective Liquors, an entity owned and controlled by Deborah. (*See* Compl. ¶¶ 116, 119.) The Trustee further alleges that the Debtors had no legal basis for making the Cantore transfers and that they received nothing in return for making those transfers. (*Id.* ¶¶ 124, 125.) As a result, the Trustee has

adequately pled lack of reasonably equivalent value, and Cantore's motion to dismiss Count IV of the complaint on that basis is denied.

## CONCLUSION

For the foregoing reasons, the motions to dismiss the Trustee's adversary complaint filed by the Insider Defendants and Cantore are denied. The Insider Defendants and Cantore are directed to file answers to the complaint by November 21, 2025. A status hearing will be held on December 5, 2025. A separate order will be entered consistent with this Memorandum Opinion.

Dated: **October 22, 2025**     **ENTERED:**

_Janet S. Baer_

Janet S. Baer
United States Bankruptcy Judge